FILED

09 FEB 27 PM 2: 12

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VILATH XAYASOMLOTH,<br><br>                Petitioner,<br>    v.<br><br>MATTHEW CATE, Secretary,<br><br>                Respondent.[1] | CASE NO. 08CV260 BEN (AJB)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

## I

## INTRODUCTION

Petitioner Vilath Xayasomloth, a pro se inmate at Calipatria State Prison, petitions for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction in San Diego County Superior Court for second-degree murder. [Doc. No. 1.] Respondent submitted a Motion to Dismiss the Petition ("Motion"), asking the Court to dismiss the Petition as untimely under 28 U.S.C. § 2244(d)(1) and for failing to exhaust state court remedies. [Doc. No. 9.] Petitioner submitted an Opposition to Respondent's Motion to Dismiss. [Doc. No. 13.] The Court's docket indicates that Respondent did not file a Reply. Petitioner moved for stay and abeyance to exhaust state remedies while his second habeas petition in the California Supreme Court was pending. [Doc. No. 18.]

---

[1] The Court substituted Matthew Cate, Secretary of the California Department of Corrections and Rehabilitation, as Respondent on January 12, 2009. *See* 28 U.S.C. § 2242; Rule 2(a) U.S.C. foll. § 2254; *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 894 (9th Cir. 1996).

1        On August 22, 2008, the Honorable Magistrate Judge Anthony J. Battaglia issued a Report and

2 Recommendation ("Report"), recommending that Respondent's Motion to Dismiss be granted and that

3 Petitioner's motion for stay and abeyance be denied as moot. On August 27, 2008, the California

4 Supreme Court denied Petitioner's second petition for a writ of habeas corpus. On February 2, 2009,

5 Petitioner filed Objections to the Magistrate Judge's Report. Respondent did not file a reply, which

6 was due by February 22, 2009. For the reasons stated below, the Court ADOPTS the well-reasoned

7 Report and Recommendation of the Magistrate Judge, GRANTS Respondent's Motion to Dismiss,

8 and DENIES as MOOT Petitioner's Motion for Stay and Abeyance.

9 **II**

10 **FACTUAL AND PROCEDURAL BACKGROUND**

11        On December 12, 2002, a San Diego County Superior Court (Case No. SCD161852) sentenced

12 Petitioner to forty years to life in prison for second-degree murder. On February 15, 2005, the

13 California Court of Appeal affirmed in part and reversed in part with directions. (Lodgment 4.) On

14 June 8, 2005, the California Supreme Court denied Petitioner's petition for review. (Lodgment 6.)

15 **A.**     **State Proceedings**

16        On April 27, 2006, Petitioner filed a petition for writ of habeas corpus in San Diego County

17 Superior Court. (Lodgment 7.) On June 26, 2006, the court denied the petition. (Lodgment 8.) On

18 December 14, 2006, Petitioner filed a petition for writ of habeas corpus in the Court of Appeal.

19 (Lodgment 9.) On April 3, 2007, the Court of Appeal denied the petition. (Lodgment 10.) On

20 July 9, 2007, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.

21 (Lodgment 11.) On January 3, 2008, the California Supreme Court denied the petition. (Lodgment

22 12.) On February 21, 2008, Petitioner filed another petition for writ of habeas corpus in the California

23 Supreme Court. (Lodgment 13.) On August 27, 2008, the California Supreme Court denied the

24 petition, citing *In re Robbins*, 18 Cal. 4th 770, 780 (1998), and *In re Clark*, 5 Cal. 4th 750 (1993).

25 **B.**     **Federal Proceedings**

26        Petitioner filed a petition for writ of habeas corpus in the United States District Court for the

27 Southern District of California on February 11, 2008. Respondent filed a Motion to Dismiss with

28 supporting Memorandum of Points and Authorities on June 2, 2008. Respondent contends that the

1   Petition was filed after the one-year statute of limitations imposed by the Antiterrorism and Effective

2   Death Penalty Act of 1996 (the "AEDPA") and, therefore, moves the Court to dismiss the Petition for

3   untimeliness.   On June 26, 2008, Petitioner filed his Opposition to Respondent's Motion.   On

4   August 1, 2008, Petitioner moved to stay and abey. On August 22, 2008, the Magistrate Judge issued

5   a Report and Recommendation, recommending that Petitioner's Petition be dismissed as untimely.

6   On February 2, 2009, Petitioner filed Objections to the Report.   Respondent did not reply to

7   Petitioner's Objections.

8                                  **III**

9                              **DISCUSSION**

10        Under 28 U.S.C. § 636, the Court "shall make a de novo determination of those portions of the

11   [magistrate judge's] report . . . or recommendations to which objection is made."   28 U.S.C.

12   § 636(b)(1)(C); *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

13   Because Petitioner has filed objections, the Court reviews the Report and Recommendation *de novo*

14   and exercises its discretion to consider the supplemental evidence that Petitioner submits with his

15   Objections.  *See Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 n.4 (9th Cir. 2005).

16   **A.**     **Statute of Limitations**

17        Statute of limitations issues must be resolved before the merits of individual claims. *See White*

18   *v. Klitzkie*, 281 F.3d 920, 921-22 (9th Cir. 2002).   Under the AEDPA, a petitioner has one year after

19   the state proceedings become final, plus any time tolled while pursuing state collateral relief, in which

20   to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d).   Specifically, the statute

21   provides:

22          (1)     A 1-year period of limitation shall apply to an application for a writ of habeas
                   corpus by a person in custody pursuant to the judgment of a State court.  The
23                   limitation period shall run from the latest of–

24                  (A)    the date on which the judgment became final by the conclusion of direct
                        review or the expiration of the time for seeking such review;
25

26                  (B)    the date on which the impediment to filing an application created by
                        State action in violation of the Constitution or laws of the United States
                        is removed, if the applicant was prevented from filing by such State
27                        action;

28                  (C)    the date on which the constitutional right asserted was initially
                        recognized by the Supreme Court, if the right has been newly

recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

*Id.*

It is appropriate to dismiss a federal petition for writ of habeas corpus with prejudice when it was not filed within the AEDPA's one-year statute of limitations. *See Jiminez v. Rice*, 276 F.3d 478, 483 (9th Cir. 2001); *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999); *see also Day v. McDonough*, 547 U.S. 198, 209-11, 126 S. Ct. 1675, 1684-85 (2006) (holding that "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition" after giving parties fair notice and opportunity to present positions). Petitioner asserts, however, that he is entitled to a later statute of limitations start date under 28 U.S.C. § 2244(d)(1)(B) and that equitable and statutory tolling of the limitations period under 28 U.S.C. § 2244(d)(1)(A) should apply.

**1.  28 U.S.C. § 2244(d)(1)(B)**

Petition asserts that he was denied access to the prison law library, preventing him from filing a timely habeas petition. According to Petitioner, while he was at Pelican State Prison from September 6, 2005, to April 2006, he was denied access to the prison law library because priority was given to prisoners with actual court deadlines. The law librarian informed Petitioner that the prison does not recognize the AEDPA deadlines as an actual court deadline. He claims that, during the twice-a-week yard access, he attempted to access the law library but was denied because he did not have an actual court deadline. Furthermore, access to the law library was limited in time because Petitioner was a "close A custody inmate," and security measures such as strip searches at yard release caused delay. Petitioner also claims that other hindrances prevented access to the law library such as power outages and fog, and constant lockdowns due to violence on staff and inmates.

On April 15, 2006, Petitioner was transferred to Ironwood State Prison, a lower security prison where he was granted access to the prison law library without requiring him to have an actual court deadline. Petitioner maintains that he was further limited because all legal books are in English and

- 4 -

1   his primary language is Laotian.  A jail house lawyer also informed Petitioner that Ironwood State

2   Prison had a limited amount of law books because of budget cuts.

3          According to Petitioner, when the Court of Appeal denied his petition, the prison was on

4   lockdown because of a racial stabbing.  He claims that he requested access to the law library but was

5   denied because only inmates with actual court deadlines were granted access to the law library.

6          Petitioner contends that the state impediment was lifted on April 16, 2006, when he was

7   transferred to Ironwood State Prison.  He, therefore, maintains that the statute of limitations should

8   begin on that date.  He also argues that he is entitled to tolling again between June and December 2006

9   when Ironwood State Prison was on lockdown and the law library was limited to inmates with actual

10  court deadlines.   Petitioner asserts that, after. release from lockdown, he immediately obtained

11  assistance and filed his petition in the Court of Appeal.

12         "[T]he petitioner must show a causal connection between the unlawful impediment and his

13  failure to file a timely habeas petition." *Bryant v. Schriro*, 499 F.3d 1056, 1060 (9th Cir. 2007); *see*

14  *also Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. 2174, 2180 (1996) (stating that inmate must prove

15  relevant actual injury when arguing that prison law library's inadequacies prevented him from pursuing

16  legal claim).  "The limited case law applying § 2244(d)(1)(B) has dealt almost entirely with the

17  conduct of state prison officials who interfere with inmates' ability to prepare and to file habeas

18  petitions by denying access to legal materials." *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir.

19  2005). In *Bounds v. Smith*, the United States Supreme Court stated that "[i]t is now established beyond

20  doubt that prisoners have a constitutional right of access to the courts." 430 U.S. 817, 821, 97 S. Ct.

21  1491, 1494 (1977), *overruled in part by Lewis*, 518 U.S. at 354, 116 S. Ct. at 2181.  This fundamental

22  right, the Court explained, "requires prison authorities to assist inmates in the preparation and filing

23  of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance

24  from persons trained in the law." *Id.* at 828, 97 S. Ct. at 1498.

25         Interpreting *Bounds*, the Court later explained that, "[b]ecause *Bounds* did not create an

26  abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant

27  actual injury simply by establishing that his prison's law library or legal assistance program is subpar

28  in some theoretical sense." *Lewis*, 518 U.S. at 351, 116 S. Ct. at 2180.  The touchstone is "meaningful

1   access to the courts"; therefore, the inmate "must go one step further and demonstrate that the alleged

2   shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."

3   *Id.*

4          Decisions by prison officials to regulate the number of inmates who can access the law library

5   and its resources does not by itself constitute a denial of access to the courts. *See Lewis*, 518 U.S. at

6   361, 116 S. Ct. at 2185; *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 858 (9th Cir. 1985). The

7   Court in *Lewis* stated that inmates do not have a constitutional right to do generalized research; the

8   Constitution only requires that inmates have the ability to present their legal claims in court. *Lewis*,

9   518 U.S. at 360, 116 S. Ct. at 2184. Additionally, the Ninth Circuit has recognized the interests prison

10  officials have in structuring when and who can access prison law libraries. *See Lindquist*, 776 F.2d

11  at 858. Prisoners must have access to the prison law library, though that access need not be unlimited.

12  *Id.* "Prison officials of necessity must regulate the time, manner, and place in which library facilities

13  are used. The fact that an inmate must wait for a turn to use the library does not necessarily mean that

14  he has been denied meaningful access to the courts." *Id.* (citation omitted).

15         Furthermore, lockdowns by prison officials are not sufficient to establish a denial of "access

16  to the courts" when done for penological interests. *Lewis*, 518 U.S. at 361-62, 116 S. Ct. at 2185. The

17  Supreme Court was clear that deference must be given to prison authorities. *Id.* The Court rejected

18  the idea that inmate lockdowns necessarily meant they were denied access to the courts. *Id.* "[A]

19  prison regulation impinging on inmates' constitutional rights is valid if it is reasonably related to

20  legitimate penological interests." *Id.* at 361, 116 S. Ct. at 2185 (quotation omitted). Therefore, with

21  regard to prisoners in lockdown, this "principle of deference has special force." *Id.*

22         In this case, Petitioner has not made an adequate showing that the claimed lockdowns posed

23  an impediment to his filing of a timely federal habeas petition. Section 2244(d)(1)(B) does not define

24  "impediment." *See Wood v. Spencer*, 487 F.3d 1, 6 (1st Cir. 2007); *Lloyd v. Van Natta*, 296 F.3d 630,

25  633 (7th Cir. 2002) (per curiam). Courts have held, however, that an impediment must "prevent" the

26  petitioner from timely filing his federal habeas petition and that the impediment must be beyond the

27  petitioner's control. *See  Wood*, 487 F.3d at 7 (concluding that, where petitioner had "the power to

28  blunt the effect of any state-created impediment" with "garden-variety diligence," tolling under

08cv0260

1    § 2244(d)(1)(B) is not appropriate); *see also Lloyd*, 296 F.3d at 633 (concluding that state's failure to

2    provide petitioner with complete transcript of his trial did not prevent him from filing his federal

3    petition because transcript was not needed to raise claim in his federal petition).  Under some

4    circumstances, however, the absence from a prison law library of basic and essential legal materials

5    such as the AEDPA itself may constitute an impediment within the meaning of the statute.

6    *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148-49 (9th Cir. 2000) (en banc per curiam).

7         Second, Petitioner has not shown that the claimed state-created impediment was unlawfully

8    imposed upon him.  Because "[t]he mere inability of a prisoner to access the law library is not, in

9    itself, an unconstitutional impediment," Petitioner must demonstrate that the lack of access to the

10   library actually prevented him from filing his federal habeas petition. *Akins v. United States*, 204 F.3d

11   1086, 1090 (11th Cir. 2000).

12        Here, Petitioner's conclusory and unsupported assertions do not persuade the Court that the

13   limitations on his access to the prison law library actually prevented him from filing a timely federal

14   habeas petition. *See Quintero v. Haws*, No. 07-CV-0579-H (POR), 2008 WL 553651, at *4 (S.D. Cal.

15   Feb. 28, 2008) (granting respondent's motion to dismiss and denying petitioner's motion for

16   evidentiary hearing while rejecting because of lack of specificity petitioner's claims that prison

17   policies, lockdowns, and his job demands restricted his access to the law library and prevented him

18   from filing timely habeas petition).

19        Third, Petitioner has not shown a "causal connection" between the alleged unlawfully imposed

20   impediment and his failure to file a timely petition.  *See Bryant v. Ariz. Att'y Gen.*, 499 F.3d 1056,

21   1060 (9th Cir. 2007) (rejecting petitioner's argument that prison library's failure to provide case law

22   interpreting § 2244(d)(1) was state-created impediment because petitioner admitted he was not even

23   aware of statute of limitations before receiving respondent's answer to his federal petition).  Here,

24   Petitioner has failed to show any causal connection between his allegedly limited access to the law

25   library and his inability to file a timely federal habeas petition.  Moreover, he has not demonstrated

26   that he made any effort to "blunt the effect" of the limitations on his access to the law library.  *See*

27   *Wood*, 787 F.3d at 7.

28

1    Thus, the Court agrees with the Report that Petitioner has not alleged with any specificity how
2    either prison policies or a limited amount of law books constituted unconstitutional or unlawful state
3    action under § 2244(d)(1)(B).  (Report at 4.)  *See Lewis*, 518 U.S. at 361, 116 S. Ct. at 2185; *Lindquist*,
4    776 F.2d at 858.  As the Report points out, Petitioner has provided no documents to show his alleged
5    request and specific denial of access, periods of limited library access, periods of open access, which
6    classes of inmates had access during each day, and when or if Petitioner had access to the library at
7    these prisons.  (Report at 4-5.)  *See Akins*, 204 F.3d at 1090 (prisoner bringing motion to vacate, set
8    aside, or correct sentence under 28 U.S.C. § 2255 "has the burden of showing that the lockdown was
9    not reasonably related to legitimate penological interests, in order for the lockdown to be considered
10   an unconstitutional impediment" (*quoting Lewis*, 518 U.S. at 361, 116 S. Ct. at 2185) (quotation marks
11   omitted)).

12       Finally, contrary to Petitioner's assertion, the evidence that he submits with his Objections fails
13   to demonstrate a causal connection between prison officials' alleged wrongful actions and his inability
14   to file a timely habeas petition.  The evidence does not "make clear the 'injury' to Petitioner," but
15   rather discusses proposed changes to the California Code of Regulations relating to law library access.
16   (Objections at 8 & "Appendix #1.")  Accordingly, because Petitioner does not demonstrate that his
17   inability to file a timely petition was due to an unlawful state impediment, he is not entitled to a later
18   start date under 28 U.S.C. § 2244(d)(1)(B).

19   **2.     28 U.S.C. § 2244(d)(1)(A)**

20       As noted above, the AEDPA's one-year statute of limitations begins to run on "the date on
21   which the judgment became final by the conclusion of direct review or the expiration of the time for
22   seeking such review."  28 U.S.C. § 2244(d)(1)(A).  As the Report points out, the period of "direct
23   review" includes the ninety-day period within which Petitioner could have filed a petition for a writ
24   of certiorari from the United States Supreme Court.  *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir.
25   1999).  The one-year statute of limitations, therefore, begins to run ninety days after the California
26   Supreme Court denies direct review.  *See id.* at 1160.

27
28

- 8 -

1    In this case, the California Supreme Court denied review on June 8, 2005. The ninety-day

2  period for the expiration of time to seek review expired on September 6, 2005. Therefore, the one-year

3  statute of limitations began to run on September 7, 2005, and expired on September 6, 2006.

4    Because Petitioner filed his federal petition on February 11, 2008, the statute of limitations

5  deadline passed. His petition is untimely unless (1) the AEDPA's statutory tolling provision brings

6  him within the limitations period or (2) equitable tolling applies to extend the filing deadline.

7                       **a.    Statutory Tolling**

8    Petitioner asserts that he is entitled to statutory tolling of the limitations period. The AEDPA

9  tolls the one-year limitations period for the "time during which a properly filed application for State

10  post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2); *see also Evans v.*

11  *Chavis*, 546 U.S. 189, 191, 126 S. Ct. 846, 849 (2006). Tolling begins "from the time the first state

12  habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral

13  challenge," but the statute of limitations is not tolled "from the time a final decision is issued on direct

14  state appeal and the time the first state collateral challenge is filed because there is no case 'pending'

15  during that interval." *Nino*, 183 F.3d at 1006 (footnote omitted). An application for post-conviction

16  review is pending while a California petitioner completes a full round of state collateral review,

17  including during the period between (1) a lower court's adverse determination, and (2) the prisoner's

18  filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law.

19  *Waldrip v. Hall*, 548 F.3d 729, 734 (9th Cir. 2008). "In California, a state prisoner may seek review

20  of an adverse lower court decision by filing an original petition (rather than a notice of appeal) in the

21  higher court, and that petition is timely if filed within a 'reasonable time.'" *Chavis*, 546 U.S. at 192-

22  93, 126 S. Ct. at 849.

23          Thus, in California, "[a]s long as the prisoner filed a petition for appellate review
         within a 'reasonable time,' he could count as 'pending' (and add to the one-year time
24       limit) the days between (1) the time the lower state court reached an adverse decision,
         and (2) the day he filed a petition in the higher state court."
25
    *Waldrip*, 548 F.3d at 734 (*quoting Chavis*, 546 U.S. at 193, 126 S. Ct. at 849-50). Where there is no
26
    clear indication from the state court as to whether the petition was timely under California law,
27
    however, the federal court must itself examine the delay and determine whether the petition was filed
28
    within what California would consider a reasonable period of time. *Chavis*, 546 U.S. at 197-98, 126

                                      - 9 -                                      08cv0260

1   S. Ct. at 852.  Even when a California state habeas petition is denied on the merits, the federal court

2   must determine whether the petition was timely, if the issue of timeliness was not expressly addressed

3   by the state court.  *Id.*  However, "*Evans* made clear that an unexplained delay of six months between

4   the denial by one California state court and a new filing in a higher California court was too long to

5   permit tolling of the federal limitations period on the ground that state court proceedings were

6   'pending.'"  *Waldrip*, 548 F.3d at 735; *see also Chavis*, 546 U.S. at 201, 126 S. Ct. at 854.

7           Petitioner filed his first state habeas petition on April 27, 2006, 233 days after the judgment

8   became final.  Before the statute of limitations ran, 132 days remained.  The San Diego County

9   Superior Court denied Petitioner's petition on June 26, 2006.  Almost six months or 171 days later,

10  Petitioner filed a petition for writ of habeas corpus in the Court of Appeal on December 14, 2006.  The

11  Report correctly points out that the issue is whether, during this period of time, a properly filed

12  application for state post-conviction relief or other collateral review was pending under 28 U.S.C.

13  § 2244(d)(2).

14          Respondent argues that tolling does not apply because he waited too long to file his petition

15  in the subsequent higher state court.  According to Petitioner, because the state court accepted his

16  petition and ruled on the merits, his petition was timely, and, therefore, statutory tolling should apply.

17  The Report correctly points out, however, that a denial on the merits does not render Petitioner's

18  petition timely.  *See Chavis*, 546 U.S. at 197-98, 126 S. Ct. at 852.  Rather, the Court looks to whether

19  the five-and-a-half month delay is "reasonable."

20          Petitioner maintains that Ironwood State Prison was placed under lockdown between June and

21  December 2006.  He further contends that, during this lockdown, the prison limited access to inmates

22  with actual court deadlines.  As further discussed below, Petitioner provides no documentation to

23  support his allegation.  In any event, in the absence of an unlawful or unconstitutional impediment,

24  the Court cannot say that this delay, if true, is unjustified.  In *Gaston v. Palmer*, after determining that

25  the petitioner's disabilities and lack of access to legal materials did not justify equitable tolling or

26  constitute an impediment, the court held that the petitioner was not entitled to "gap tolling" for the

27  intervals between his California state habeas filings, given the length of the delays, the lack of a clear

28  statement by the California legislature or the California courts that delays of such length were

1    "reasonable," and the lack of explanation or justification for the delays. 447 F.3d 1165, 1167 (9th Cir.

2    2006). Because Petitioner's objections in this regard are without merit, the Court overrules them and

3    finds that Petitioner is not entitled to statutory tolling.

4                  **b.**      **Equitable Tolling**

5          Petitioner further argues that equitable tolling of the AEDPA's one-year statutory period of

6    limitation applies because he was denied access to the law library. The Magistrate Judge found that

7    Petitioner failed to provide any evidence to support his contention that he was denied access to the

8    library or that he had limited access to the library. The Magistrate Judge also found that Petitioner's

9    claim of limited access to the law library did not suffice as extraordinary circumstances.

10         The Court concurs with the Magistrate Judge's Report. Equitable tolling applies to the

11    AEDPA's one-year statute of limitations. *See Harris v. Carter*, 515 F.3d 1051, 1054 n.4 (9th Cir.

12    2008) (holding that § 2244(d) allows for equitable tolling). "Generally, a litigant seeking equitable

13    tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights

14    diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544

15    U.S. 408, 418, 125 S. Ct. 1807, 1814 (2005); *cf. Harris*, 515 F.3d at 1054-55 (noting previous Ninth

16    Circuit standard defining equitable tolling as "available only when 'extraordinary circumstances

17    beyond a prisoner's control make it impossible to file a petition on time'" (*quoting Stillman v.*

18    *LaMarque*, 319 F.3d 1199, 1202 (9th Cir. 2003))). The petitioner "must show that the 'extraordinary

19    circumstances' were the but-for and proximate cause of his untimeliness." *Allen v. Lewis*, 255 F.3d

20    798, 800 (9th Cir. 2001) (per curiam). The determination of whether a petitioner is entitled to

21    equitable tolling is "highly fact-dependent." *Espinoza-Matthews*, 432 F.3d at 1026.

22         Because Petitioner does not document the exact duration of any lockdown or his attempts to

23    access the law library, the Court cannot say that the library access restrictions were the but-for and

24    proximate cause of Petitioner's untimeliness for almost six months. In contrast, the petitioner in

25    *Singleton v. Scribner* provided substantial evidence in the form of prison "Program Status Reports"

26    documenting the exact duration of each lockdown, the limitations on the number and race of prisoners

27    allowed into the law library as well as the duration and frequency of the visits. No.

28    06cv1392-IEG(BLM), 2007 WL 1300071, at *10 (S.D. Cal. May 2, 2007). The reports also

1 demonstrated that the prison was under continuous modified lockdown conditions for nearly the entire

2 one-year statutory limitations period. *Id.* The court in *Singleton*, therefore, found that the lockdowns

3 at the prison constituted "extraordinary circumstances" that caused the petitioner's untimeliness. *Id.*

4      In any event, "lockdowns, restricted library access and transfers do not constitute extraordinary

5 circumstances sufficient to equitably toll the [AEDPA] statute of limitations. Prisoners familiar with

6 the routine restrictions of prison life must take such matters into account when calculating when to file

7 a federal [habeas] petition." *Atkins v. Harris*, No. C 98-3188 MJJ(PR), 1999 WL 13719, at *2 (N.D.

8 Cal. Jan. 7, 1999).

9      Petitioner's claims are common to virtually all prisoners eligible to file federal petitions, and do not entitle him to equitable tolling. Hence, permitting equitable

10 tolling under such circumstances would essentially eviscerate equitable tolling because every prisoner would be entitled to make such claims. To the contrary, equitable

11 tolling, as mentioned, is limited to the diligent petitioner who has been prevented from timely filing his petition due to extraordinary circumstance beyond the petitioner's

12 control, not due to the everyday facts of prison life.

13 *Storie v. Kramer*, No. 1:06-cv-01796-AWI-TAG HC, 2009 WL 306705, at *7 (E.D. Cal. Feb. 6, 2009)

14 (*citing Pace*, 544 U.S. at 418, 125 S. Ct. at 1814-15); *see also Akins*, 204 F.3d at 1089-90 (holding that

15 prison lockdowns and misplaced legal papers did not present extraordinary circumstances that would

16 warrant equitable tolling).

17      Petitioner also appears to maintain that his lack of English proficiency warrants equitable

18 tolling. "[A] pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary

19 circumstance warranting equitable tolling." *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006);

20 *see also Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986) (pro se prisoner's

21 illiteracy and lack of knowledge of law unfortunate but insufficient to establish cause). "[A]

22 non-English-speaking petitioner seeking equitable tolling must, at a minimum, demonstrate that during

23 the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either

24 legal materials in his own language or translation assistance from an inmate, library personnel, or other

25 source." *Mendoza v. Carey*, 449 F.3d 1065, 1070 (9th Cir. 2006).

26      The Second Circuit recently concluded that habeas petitioners, for whom English was not their

27 first language, were not entitled to equitable tolling of the statute of limitations based on the assertion

28 of a language barrier. *See Diaz v. Kelly*, 515 F.3d 149, 154 (2008). The court noted that, as a basis

- 12 -

08cv0260

1   for equitable tolling, the petitioners had "claimed nothing more than the unavailability of personnel

2   within their prisons who could translate for them during the applicable limitations periods." *Id.* The

3   court noted the petitioners had not alleged "any efforts to contact anyone outside the prison who might

4   assist in making them aware, in their language, of legal requirements for filing a habeas corpus

5   petition, nor what efforts were made to learn of such requirements within their places of confinement."

6   *Id.* Therefore, the Second Circuit concluded that "[e]quitable tolling was properly rejected in their

7   cases." *Id.*

8        In this case, Petitioner does not allege that, despite his "diligent efforts," he was unable to

9   secure legal materials in his own language or to procure translation help from other inmates, library

10  personnel, or other source. Further, Petitioner has not alleged his efforts, if any, in learning of the

11  requirements for filing a habeas petition. Accordingly, Petitioner is not entitled to equitable tolling

12  of the statute of limitations based on an alleged language barrier.

13  **B.      Evidentiary Hearing**

14       Petitioner further requests an evidentiary hearing on the issue of timeliness. As noted above,

15  Petitioner has failed to make specific factual allegations with respect to the alleged impediment, the

16  claimed extraordinary circumstances and his own diligence that, if true, would entitle him to statutory

17  or equitable tolling. Having failed to do so, he is not entitled to an evidentiary hearing. *See Roy v.*

18  *Lampert*, 465 F.3d 964, 969-70 (9th Cir. 2006); *Williams v. Woodford*, 384 F.3d 567, 588 (9th Cir.

19  2004) (conclusory allegations unsupported by specific facts do not warrant evidentiary hearing);

20  *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994) (en banc). Accordingly, the Court denies

21  Petitioner's request for an evidentiary hearing.

22  //

23  //

24  //

25  //

26  //

27  //

28  //

08cv0260

## IV

## CONCLUSION

Petitioner's petition for a writ of habeas corpus is untimely. Equitable tolling is inapplicable in this case, and statutory tolling fails to bring the Petition within the applicable limitations period. Accordingly, the Court **OVERRULES** Petitioner's Objections, **ADOPTS** the Report and Recommendation in its entirety, and **GRANTS** Respondent's Motion to Dismiss the Petition. The Court **DENIES** as **MOOT** Petitioner's Motion for Stay and Abeyance. The Court further **DENIES** Petitioner's request for an evidentiary hearing. The Clerk shall close the file.

**IT IS SO ORDERED.**

DATED: 2/27/08

HONORABLE ROGER T. BENITEZ
UNITED STATES DISTRICT JUDGE

08cv0260